AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court



DISTRICT OF Massachusetts

UNITED STATES OF AMERICA

V.

EDDIE MATOS

**CRIMINAL COMPLAINT**

CASE NUMBER: **05mj619**

(Name and Address of Defendant)

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about ____ March 2, 2005 ____ in ____ Hampden ____ county, in the ____ Springfield ____ District of ____ Massachusetts ____ defendant(s) did, (Track Statutory Language of Offense)

(1) manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance
(2) possessed, in or affecting commerce, a firearm

in violation of Title __21 and 18__ United States Code, Section(s) ____ 841(a)(1) and 922(g); 924(c) ____

I further state that I am a(n) ____ Special Agent of the ATF ____ and that this complaint is based on the following facts:
                                                          Official Title

Please see attached affidavit.

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

**MARCH 3, 2005**                                    at          Springfield, Massachusetts
Date                                                                 City and State

**MICHAEL A. PONSOR**
~~Kenneth P. Neiman~~
United States Magistrate Judge                       _____
Name & Title of Judicial Officer                     Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

Affidavit of Special Agent James P. Martin

I, James P. Martin, being duly sworn, do hereby depose and state the following:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), and have been so employed since May 1999. Previously, I was employed as a Police Officer with the Town of Bellingham Massachusetts for approximately five years. I am responsible for investigating and enforcing the federal firearms laws relating to Title 18 United States Code, to include offenses within the Gun Control Act (GTA) of 1968 and the National Firearms Act (NFA). I attended the Criminal Investigator Training Program, at the Federal Law Enforcement Training Center (FLETC), where I received training and instruction as Special Agent, including firearms training, the execution of search and arrest warrants, investigative techniques, and legal instruction, which covered Fourth Amendment searches and seizures. I have attended specialized training known as New Professional Training ("NPT") through ATF, at FLETC, where I received instruction in firearms technology and identification, firearms trafficking, explosives, and arson. I have received training by the Drug Enforcement Agency

1

("DEA") in narcotics investigations. During my career as a Special Agent, I have participated in the execution of numerous arrest warrants and search warrants relating to firearms and narcotic offenses.

2. This affidavit is submitted for the limited purpose of establishing probable cause to believe that Luis Zayas ("Zayas") and Eddie Matos ("Matos") did (1) unlawfully possess a firearm in violation of Title 18, United States Code, Section 922(g); (2) unlawfully distribute and possess with the intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841(a)(1); (3) conspire to distribute a controlled substance (cocaine) in violation of Title 21, United States Code, Section 846; (4) unlawfully use a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A); and, (5) conspire to unlawfully use a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A). In light of the limited purpose for which this affidavit is being submitted, I have not included each and every fact known to me concerning the government's investigation of either Luis Zayas or Eddie Matos. The information contained in this affidavit is based

on my personal involvement in this investigation, my training and experience, my review of documents, surveillance, and information provided to me by other law enforcement officers.

3. In approximately September of 2004, an ATF confidential informant ("CI") directed my attention to the target locations of 37 Allendale Street, and 38 Allendale Street. This "CI" has provided information that led to the recovery of three firearms. The CI also provided information concerning the source of these firearms, and made numerous undercover monitored telephone calls with the source of at least two the firearms. The CI's cooperation in that case led to a confession by an individual (the source of two of the firearms). The confession independently corroborated significant and material details of CI's account concerning the firearms. In addition, the DEA has used this CI to make approximately 5 controlled purchases of controlled substances, during a time period from September 2004 to February 2005. These controlled purchases led to the arrests of two suspected drug traffickers.

4. The CI told me that from May through September 2004, he/she visited 37 Allendale Street on a regular basis. According to the CI, a person known to the CI as "Melo," and an associate of "Melo's" known as "Chino,"[1] reside at and distribute crack cocaine from this address. The "CI" reported that "Melo" uses a cell phone to conduct his criminal activities and that the number is (413) 221-1419. The CI reported that while inside the residence in 2004 he/she had observed numerous firearms, including a small black .25 caliber semi-automatic pistol, a small chrome .25 caliber semi-automatic pistol, a black .380 caliber semi-automatic pistol, a Colt AR-15 semi-automatic assault rifle with two thirty round magazines loaded with .223 caliber ammunition, and a firearm he/she described as a short-barreled shotgun. The CI reported that he/she also observed up to 100 grams amounts of powder and crack cocaine being packaged and prepared for sale by "Melo" and "Chino".

5. According to the CI, Zayas regularly supplies approximately 100 grams of crack Cocaine to two or three locations in Holyoke, MA. The CI also stated that Zayas reportedly has a safe house located at 38 Allendale Street, Springfield MA, across the street from Zayas's own residence (37 Allendale

---

[1] Chino has not yet been identified.

4

Street). According to the "CI", this location is where Zayas and a member of his organization named Eddie Matos ("Matos") cook the powder cocaine to make it into crack and prepares it for retail sales. The CI reports that Zayas stores his handguns and Colt AR-15 both at this safe house and his residence at 37 Allendale Street, for protection of the cocaine and illegal proceeds. CI further stated that Zayas possessed a safe in the basement of 37 Allendale Street, and the CI believed, based on his conversations with Zayas, that he kept the proceeds of his drug business in that safe.

6. The CI also reported that Zayas supplied drugs for resale to an apartment on Appleton Street in Holyoke. This resale location was operated by a black male known as "BT." The CI reported that "BT" was arrested with a .45 caliber handgun by the Holyoke Police. The "CI" reported that "BT" was selling crack cocaine for Zayas at the time of the arrest and the .45 belonged to Zayas who gave it to "BT" for protection of the drug operation. Based on this report from the CI, BT was later identified as James Booker. I reviewed the arrest report of James Booker on May 31, 2004 by the Holyoke Police. During the incident Booker fired two rounds from a .45 caliber semi-automatic pistol which was recovered

5

along with crack cocaine at Booker's apartment, 467 Appleton Street, sixth floor apartment. This was consistent with the information that the CI provided about BT. I showed the CI a photograph of James Booker, and the CI identified Booker as the person the CI knew to be BT, a retail drug connection of Zayas.

7. The CI also reported that sometime during the summer of 2004, he/she observed Zayas with the AR-15 rifle. The "CI" reported that he observed Zayas go into his residence at 37 Allendale Street and retrieve the AR-15 and one thirty round magazine which he put into his 2003 Chevrolet K1500 Sports Utility Vehicle bearing Massachusetts registration "US7213", registered to Zayas's wife Nancy Baez. Zayas told the CI how he [Zayas] proceeded to Dwight Street in Springfield and used the rifle to shoot four or five rounds at a rival drug dealer whose last name is Cardona. Zayas detailed to the CI how he picked up the shell casings after he fired the rifle.

8. On or about November 16, 2004, the CI, under the direction of the ATF and DEA, called Zayas and requested cocaine. When Zayas indicated that he could provided cocaine to the CI, the CI went to 37 Allendale, and purchased five individually wrapped pieces of an off white chunky substance believed to be approximately one gram of crack cocaine an

individual known as "Chino." The CI knew Chino to be an individual who dealt drugs with Zayas. Before this transaction, agents followed specific procedures to ensure the reliability of the transaction.[2] For example, the CI and his vehicle were searched prior to the controlled purchase and after the controlled purchase. The CI was also followed by agents and observed going to and from the residence. During this transaction the CI arrived and parked outside of the residence. The CI then telephoned Zayas' cellular telephone number (413) 221-1419[3], and told Zayas that he/she was at his residence. The CI was familiar with Zayas's voice from all their prior meetings and conversations. The CI then relayed to the agents how Zayas said he was not home but could telephone "Chino" to deliver the crack cocaine to the CI (who remained parked in front of 37 Allendale Street). The CI then requested $100.00 worth of crack cocaine from Zayas. Minutes later, Chino appeared from 37 Allendale Street and approached the CI's vehicle. The "CI" then gave previously recorded money to "Chino" in exchange for five individually wrapped pieces of crack

---

[2] These procedures were used for every controlled buy described in this affidavit.

[3] Our investigation has revealed that Nancy Baez, believed to be Zayas's significant other, is the subscriber for this telephone number.

cocaine as negotiated during the "CI's" conversation with "Melo". The agents observed "Chino" return into 37 Allendale through the front door, immediately after the transaction. ATF Task Force Officer Norm Shink later tested one of the pieces which indicated positive for cocaine hydrochloride.

9. On November 30, 2005, the CI made a second controlled purchase of a narcotics outside 37 Allendale Street. On this date, the CI again made telephone contact with the person who he/she knew to be Zayas. The CI then proceeded to 37 Allendale Street and parked in front of 37 Allendale Street. "Chino" appeared from 37 Allendale Street, met the CI and directed the CI to accompany him to the driveway at 38 Allendale, where the CI and "Chino" and met with Eddie Matos.[4] The CI reported that Matos then handed "Chino" a pill container, which appeared to be filled with rocks of crack cocaine. The transaction was audio and video taped by surveillance. The "CI" and "Chino" then walked into 36 Allendale Street and into the kitchen. The CI then conducted a purchase of five pieces of crack cocaine for

---

[4]The CI viewed a photograph of Eddie Matos, taken by the Springfield Police Department, and said Matos was the person that delivered the pill bottle to "Chino" on November 30, 2004.

$100.00 of pre-recorded buy money from "Chino" who took five pieces of crack cocaine from the pill container. The CI then departed the area in his/her vehicle and was followed by SA Martin. The CI then met with ATF Task Force agents at a pre-designated location. I then searched the CI and retrieved five chunks of an off-white substance believed to be crack cocaine. SA Martin then searched the CI and his vehicle with negative results. SA Martin field-tested the crack cocaine, which was positive for cocaine hydrochloride.

10. On Thursday, February 24, 2005, the "CI" involved in this matter placed a telephone call to the person that he/she has identified as Zayas, on Zayas's cellular phone number (413) 221-1419. The CI told Zayas he was looking for crack cocaine. Zayas told the CI to come to his residence. DEA and ATF arranged for the CI to make a controlled purchase of cocaine from Zayas. The CI and his vehicle were searched prior to and after the buy with negative results. The CI was also observed going to and from the residence. The CI then drove to 37 Allendale Street, parked outside of Zayas' residence, walked into the residence and purchased the crack cocaine from Zayas. The actual transaction - money for drugs - occurred in Zayas' living room. Following the

controlled purchase the surveillance observed Zayas and the CI walk across the street from 37 Allendale Street to 38 Allendale Street, the suspected stash location for Zayas drugs and firearms. The CI reported that he followed Zayas into the dining room. In the dining room, the CI was shown a large amount of hydroponics marijuana [several pounds], a scale, along with a large sum of money placed next to the marijuana on the dining room table. The CI stated that it appeared to him/her customers were waiting to be served by Eddie Matos, the same individual who provided the pill bottle that contained cocaine to "Chino" during the controlled purchase on November 30, 2004. The CI observed people giving money to Matos in exchange for bags of marijuana. The CI reported that he/she observed Matos hand Zayas approximately $500.00 of US Currency. This incident was audio taped only. ATF Special Agent James Martin later field tested the piece of crack cocaine purchased from Zayas, which indicated positive for cocaine hydrochloride.

11. On March 3, 2005, ATF Task Force Agents, with the assistance of other law enforcement agencies, executed federal search

warrants[5] at 37 Allendale Street (Zayas' residence) and 38 Allendale Street (Matos' residence). Agents recovered three firearms and approximately 100 grams of crack cocaine at 38 Allendale Street (Matos' residence). Agents found a 25 caliber pistol (loaded with rounds) in a kitchen cabinet with a scale, and a metal pan with white residue. Approximately five feet from the firearm, in a closet, agents recovered crack cocaine and powder cocaine. The crack cocaine recovered from the kitchen weighed approximately 92 grams. Agents also found over 50 rounds of .25 caliber ammunition in the kitchen. In the basement of 38 Allendale Street, agents recovered a .45 caliber semiautomatic pistol and a Colt .223 caliber semiautomatic assault rifle. Agents also recovered approximately eighty rounds of .223 caliber ammunition, and approximately fifty rounds of .40 caliber ammunition. Agents also recovered approximately 30 grams of crack cocaine in the basement in close proximity to the firearms.

---

[5]The respective docket numbers for these search warrants are as follows: 37 Allendale Street (05mj616KPN) and 38 Allendale Street (05mj617KPN). The search warrants were authorized by United States Magistrate Judge Kenneth P. Neiman on March 2, 2005.

12. After waiving Miranda Rights, both Zayas and Matos admitted to possessing the three firearms described above. Zayas admitted to actual and constructive possession of all three firearms. Matos admitted that he had handled the .25 caliber firearm, and that he had allowed Zayas to store the rifle and pistol in Matos' basement. ATF Agent Kurt Wheeler, confirmed with me that all three firearms described above have traveled in interstate, and therefore affected, interstate commerce.

13. With respect to the controlled substances, Zayas admitted to bringing cocaine to 38 Allendale Street on March 2, 2005, and leaving the drugs with Matos. Matos admitted to giving Zayas permission to cook the cocaine into crack in Matos' kitchen, and then to store the drugs and firearms in Matos' apartment.

14. Based on the foregoing, I believe that probable cause exists that Luis Zayas ("Zayas") and Eddie Matos ("Matos") did (1) unlawfully possess a firearm in violation of Title 18, United States Code, Section 922 (g); (2) unlawfully distribute and possess with the intent to distribute a controlled substance in violation of Title 21, United States Code, Section 841 (a)(1); (3) conspire to distribute a controlled substance (cocaine) in violation of Title 21,

United States Code, Section 846; (4) unlawfully use a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A); and, (5) conspire to unlawfully use a firearm in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c)(1)(A).

James P. Martin
Special Agent
Bureau of Alcohol, Tobacco,
Firearms & Explosives

Subscribed and sworn to before me this <u>3th</u> day of March 2005.

MICHAEL A. PONSOR
UNITED STATES DISTRICT JUDGE

13