UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action: |
| | ) | O5-30012-NG |
| EDDIE MATOS, | ) | |
| Defendant | ) | |

## Defendant's Objections to Presentence Report for Eddie Matos

The Defendant, Eddie Matos, submits the following objections to the Pre-Sentence Report:

**Objections #1, ¶7** It must be clarified that at Luis Zayas' disposition, the court explicitly stated that since the court treated Zayas as an organizer/leader, he was not available for the "safety valve" and was thus subject to the mandatory minimum of ten years. As such, the court stated:

> I don't have to address the inconsistencies in the proffer, although I am troubled by them, and I also don't have to address whether or not this was – this was a crime that involved a gun. I am very, very troubled by the use of acquitted conduct in connection with – by making a finding, albeit under different standards that seem to be inconsistent with the jury's finding on the gun issue, but I don't have to go there. *Disposition Transcript* pg 7, lines 3-10.

Nevertheless, on the Judgment, page 8, the Court specifically checked the box regarding chapter Two specific offense characteristics, and added the comment, "no increase per 2D1.1(b)(1)."

**Objection #2 ¶15 (10)** The PSR characterizes 2 bags of drugs as crack cocaine that were found in the Bathroom adjacent to the Kitchen. But the analysis of the 2 bags indicates a net weight of .40 of cocaine hydrochloride and .60 of cocaine. The reference to these bags as containing crack should be removed.

**Objection #3 ¶26 (15)** The drugs found on 3/3/05 near the kitchen were analysized as cocaine and not cocaine base. The chart correctly makes the equivalent of the .60 grams of cocaine to Marijuana. But the Marijuana equivalent of the one bag containing .40 grams of cocaine should be 80 grams and not 8 kilograms. The total weight is reduced to 2,199 kilograms of marijuana. The guideline level does not change.

**Objection #4 ¶28** The defendant's offense should not be increased for possession of a firearm. The rules of §1B1.3 govern all specific offense characteristics. *See* §1B1.2(b)(n.2). The government has provided no evidence to demonstrate that the scope of Matos' agreement with Zayas involved possessing firearms in connection with

distributing drugs. Relevant conduct requires that in order to hold the defendant accountable for the conduct of his co-defendant, Zayas, the court must: "First determine the scope of the criminal activity the particular defendant agreed to jointly undertake (i.e., the scope of the specific conduct and objectives embraced by the defendant's agreement). § 1B1.3 (n.(b)(2). The facts of this case do not demonstrate that Matos' role in offense was more than allowing Zayas to use his (Matos') home as a place to stash his (Zayas') firearms and drugs, and to assist Zayas in distributing the drugs. There is no evidence that the presence of the firearms required Matos to have constructive possession of the firearms owned by his co-defendant and boss, Zayas. Matos did not have any control over the firearms. This SOC applies unless it is clearly improbable that the weapon was connected with the offense.

The Eighth Circuit requires the government to establish not only the possession of the weapon during the offense, but also that the weapon was related to the offense. *U.S. v Turpin*, 920 F.2d 1377 (8th Cir. 1990) *See also* U.S. v Matthews, 5 F.3d 1161, 1166 (8th Cir. 1993). The Eighth Circuit has held that:

> Because of the aggravating nature of U.S.S.G §2D1.1(b)(1), because courts strictly construe penal statutes, and because of Congress' intent in developing the Guidelines and the Specific Offense Characteristics, the government must establish a relationship between a defendant's possession of the firearm and the offense which he or she has committed. *U.S v Khang*, 904 F.2d 1219,1223 (8th Cir. 1990)

The Eight Circuit found that the "plain meaning of 'clearly improbable'" refers to a standard of proof rather than a burden of proof." *Khang*, 904 F.32d at 1223 n.7.

The Third Circuit has also weighed in on the issues and found that the government has the burden of establish that it was not clearly improbable that the gun was connected to the offense. *See U.S. v Price*, 13 F.3d 711, 733(3d Cir.)

It is also noted that the government dismissed the 924(c) charge against the defendant after a jury found the statute did not apply to Zayas' offense conduct. Zayas, being the organizer/leader did have control over the firearms found in the defendant's home. Although 924(c) requires a different standard for application, as the Court pointed out, use of acquitted conduct in connection with, is troubling.

> Even if the Court should decide that Mr. Matos should receive a sentencing enhancement due to the presence of firearms in his home, he is still eligible for a downwards departure under 5C1.2(2). Numerous cases have held that the level of culpability required to prevent a downward departure under the 5C1.2 (2) is higher than that required to effectuate a sentencing enhancement under 2D1.1.

> In <u>United States v. Figueroa-Encarnacion</u>, 343 F. 3d 23, 26-27 (1st Cir. 2003) the Appellate court in this jurisdiction jointed with 5 other circuits in holding that a defendant

By all measures, Matos' offense conduct does not include possessing a firearm in connection with the offense.

Case 3:05-cr-30012-NG   Document 195   Filed 06/16/2008   Page 3 of 4

**Objection #5 ¶29** The PSR fails to provide a mitigating role adjustment for Matos. The offense facts, however, demonstrate that Matos should receive a two-level reduction for his role at §3B1.2(b). The guideline requires that a defendant is a minor participant if he is less culpable than most other participants, but whose role could not be described as minimal. Id (n.5). As noted above, Matos' role was limited to assisting Zayas in the distribution business and allowing his home to be used as stash house for Zayas. It is not clear that Matos knew the entire scope of Zayas' operation since Zayas had another stash house in Holyoke. A minor role adjustment is available even when there are only two defendants involved. *U.S v Speenburgh*, 990 F.2d 72, 74-76 (2d Cir. 1993) (departure may be appropriate where there are no other criminal responsible participants); *U.S. v Bierley*, 922 F.2d 1061, 1065 (3d Cir) (Same).

Nor is it known how much Matos earned for his role, but his financial report provides insight into this issue. Matos has five dependents and a monthly income of $822. He is a taxpayer and has reported the highest AGI for 2003, of $37,493. There are no bank accounts with any sums of money.

Nor is it clear that Matos was essential to Zayas' operation. Zayas used Matos to assist his distribution and to hide the drugs, but without Matos, Zayas could continue to carry on his business. *U.S. v Salgado*, 250 F.3d 438, 458 (6th Cir. 2001) (defendant who plays a lesser role may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme.) Although Matos once accompanied Zayas to NY while Zayas made a purchase, there is no evidence that Matos had authority to purchase the drug from the source or to negotiate a price. In this regard, Matos did not have knowledge of the scope of the Zayas drug operation.

Matos should be given two-levels off the offense level.                                              -2

**Objection #6 ¶35** The defendant submits that he is eligible for the Safety Valve provision at §5C1.2 inasmuch as he has one criminal history point, no firearm in connection with the offense and no violence involved in the offense.

Moreover, since the defendant is eligible for the Safety Valve and since he is also eligible for a minor role reduction, the Adjusted Offense Level is 26. The defendant will meet with the AUSA to provide a full proffer regarding his role in the offense.

| | |
|---|---|
| Drug Weight  Base Offense Level | 30 |
| §2D1.1(a)(11)  Safety Valve | -2 |
| §3B1.2(b) | -2 |
| Offense Level | 26 |
| Acceptance of Responsibility | -3 |

**Objection #7 ¶119** The defendant submits that there are factors that may warrant a variance from the advisory guidelines. The defendant is an involved father to five young children, ages 3 to 12. The defendant and his common-law wife work in tandem to ensure full coverage and care of their own children. A long absence of the defendant would be an enormous hardship on Ms. Mendez and her children.

Another factor is the unwarranted disparity that would attend to Matos being sentenced to the same amount of time as his boss and co-defendant Zayas.

Respectfully Submitted,<br>
The Defendant

By his attorney:

/s/Perman Glenn, III
Perman Glenn, III
Law Offices of Perman
1163 Main Street
Springfield, MA 01103
413-734-9955
BBO#: 553724