UNITED STATES DISTRICT COURT
DISTRIST OF MASSACHUSETTS

UNITED STATES OF AMERICA :
:
:
v. : CRIMINAL NO: 05-30012-NG
:
EDDIE MATOS :

**DEFENDANT'S SENTENCING MEMORANDUM**

**And**

**MOTION FOR VARIANCE FROM THE GUIDELINE RANGE**

## I. <u>Introduction</u>

Defendant Eddie Matos, through counsel, respectfully submits this Sentencing Memorandum and Motion for a downward variance/departure in connection with his sentencing by this Court on July 9, 2008. Mr. Matos requests the Court to sentence him to time served (one month) and three years of Supervised Release with a special condition of six months in Community Confinement followed by six months of Home Confinement. Mr. Matos should also be required to participate in drug treatment. That sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. §3553(a)(2). Under the circumstances present in Matos's offense and personal characteristics, it is a sentence that provides just punishment and further recognizes Mr. Matos's paternal responsibilities to five young children.

## II. Factual Background

Eddie Matos plead guilty before Your Honor on June 11, 2007 to five counts of an eight-count Indictment that charged him with Possession with Intent to Distribute Cocaine Base in violation of Title 21 U.S.C. §841(a)(1) and Aiding and Abetting in violation of Title 18 U.S.C. §2 (Counts 1 and 2); Conspiracy to Possess with Intent to Distribute Cocaine Base in violation of Title 21 U.S.C. §846 (Count 4);. Possession with Intent to Distribute Marijuana in violation of Title 21 U.S.C. §841(a)(1) and Aiding and Abetting in violation of Title 18 U.S.C. §2 (Count 5); Conspiracy to Possess with Intent to Distribute Marijuana in violation of Title 21 U.S.C. §846 (Count 6). The total amount of cocaine base attributable to Matos is 109.9 grams. This amount is sufficient to trigger a ten-year mandatory minimum sentence. The inclusion of the marijuana brings the drug amount to a marijuana equivalent of 2,199 kilograms.

A seventh count for use of a firearm in violation of Title 18 U.S.C. §924(c) was dismissed in view of co-defendant Zayas' acquittal on that count. Zayas was sentenced by the court to the mandatory minimum of ten years. Zayas might have been eligible for the "safety valve," but for a two-level enhancement for his aggravating role.

## III. Argument

In light of a pair of decisions by the United States Supreme Court that outlined the factors a sentencing court should consider in formulating a defendant's sentence, *Gall v. United States*, 128 S.Ct. 586 ( 2007); *Kimbrough v. United States*, 128 S.Ct. 558 (2007), the First Circuit has recently weighed in on the scope and extent of a district court's

discretion under the now-advisory federal sentencing guidelines. U.S. v Martin, 520 F. 3d 87, 91 (1st Cir. 2008) the court stated that "A sentencing determination should begin with the calculation of the particular defendant's GSR…[including] an assess[ment] of any departures." However, the guidelines are only advisory, *United States v. Booker*, 543 U.S. 220 (2005) and the sentencing court may not mechanically assume that the GSR frames the boundaries of a reasonable sentence in every case. *See Gall, 128 S.Ct. at 596-97."* Procedurally, as *Gall* and now *Martin* directs, we begin with the Advisory Guideline range.

**(a) The Advisory Guidelines/Unresolved Issues**

As of this writing, there is disagreement regarding the appropriate guideline level. Essentially, the defendant asserts that he should not be held accountable for the weapon enhancement under §2D1.1(b)(1) for reasons explicated in his objections to the pre-sentence report. Even if the court does find an enhancement appropriate, the defendant believes that he is eligible for relief from the mandatory minimum ten-year penalty under the provisions of the "safety valve," because the defendant did not use or possess any firearm "in connection with the offence," and no other disqualifying factors are present. Defendants Objections to Presentencing Report ("DO"); See 5C1.2

The other dispute involves Matos' role in the offense. Matos submits that he is eligible for a two-level reduction for his limited role in the offense. According to the application note at §3B1.2(5), a defendant who is less culpable than most other participants is eligible for a guideline reduction as a minor participant. The guideline and the commentary are unclear about what constitutes a minor or minimal role. In contrast

to the specificity found in most guidelines, this guideline and commentary appear rather unhelpful. A document issued by the Commission in 1997, entitled "Guideline Sentencing: Determining Role in the Offense §3B1.2 (Mitigating Role)," acknowledges this lack of guidance:

> While the Commission has published proposed amendments to this language [§3B1.2] for five years, no amendment has been adopted. The Commission recognizes that the mitigating role guideline lacks specificity; however, the Commission leaves to the sentencing court the responsibility of determining whether a defendant is less culpable and should receive an offense level reduction.[1]

Matos avers that his correct Total Offense Level is 23 and the Criminal History Category is I for a guideline range of 46 – 57 months. The defendant requests the court to resolve these issues before arriving at the advisory guideline range.

**(b) <u>Sentencing Considerations under 3553(a)</u>**

The Supreme Court now *requires* that in addition to considering the final advisory guideline calculation, the sentencing court must consider the statutory sentencing factors at 18 U.S.C. §3553(a). *United States v Booker*, 125 S.Ct. 738 (2005). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed--(A) to reflect the seriousness of the offense, to promote respect for the

[1] Office of Training and Technical Assistance, U.S. Sentencing Commission, *Guideline Sentencing: Determining Role in the Offense §3B1/2 (Mitigating Role)* 2 (Mar.24, 1997) (posted www.ussc.gov).

> law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

3553(a)(1)&(2). Thus, the defendant will address these areas that are to be considered in conjunction with the Sentencing Guidelines.

**(1) <u>Nature and Circumstances of the Offense</u>**

Eddie Matos met his co-defendant, Luis Zayas, in about 1997 when he (Matos) was 17 years old. The meeting occurred when Zayas moved into a house across the street from Matos on Allendale Street, a depressed and somewhat dangerous section of Springfield. Zayas, who is fully ten years older than the defendant, is married to the cousin of the defendant's common-law wife. Zayas worked at American Pad and Paper, LLC ("AMPAD") in Holyoke for many years. But when AMPAD laid him off, Zayas began to sell drugs. About one year before the defendant's arrest, Zayas asked the defendant if he (Zayas) could use the defendant's home to store drugs. Matos agreed to allow his home to be used as a "safe house" for the cocaine and provided Zayas with a key to his home. The defendant has also assisted Zayas in cooking cocaine into cocaine base. Matos was a user of marijuana and has admitted that he sold quantities of marijuana himself. Zayas also stored guns in Matos' home, but not with any enthusiastic support from Matos. Just prior to their arrest, Matos accompanied Zayas on a trip to NYC where Zayas purchased cocaine. In performing these actions, Matos aided and

abetted the Zayas' distribution of cocaine base. Matos is also responsible for his own actions in distributing marijuana.

Zayas operated a fairly extensive drug distribution network in the areas of Springfield and Holyoke and he used various distributors to assist in his operation. The defendant, however, was primarily used as a cover for Zayas and had no knowledge of the extent of Zayas' operation, or the parties involved in Zayas' distribution network.

The defendant's motivation for allowing Zayas to use him and his home can be best understood in the context of the relationship between them. Although he sometimes sold Matos cheaper marijuana than Matos could get on his own, Zayas did not pay the defendant for his services or for the use of his home. Rather, the relationship could be characterized more as an older brother or relative using his influence to get what he wanted. Recall that Zayas lived across the street from Matos and a good relationship developed over the years while Zayas worked at AMPAD. The defendant looked up to Zayas and would have done any favor Zayas asked of him. Matos even extended some financial assistance to Zayas' children in 2003, *PSR ¶93* It would have taken a stronger, perhaps older person, uninvolved in drugs himself to have turned down Zayas' request to use his house. This explanation is not to excuse Matos' behavior, but to put it in context for a better understanding of the circumstances that led Matos to this Court. The defendant believes this Court has an adequate understanding of the facts in this case to make a determination that he was a minor participant in this offense.

Furthermore, the Presentence Report makes it clear that Matos' drug of distribution was exclusively marijuana. Although he did assist Zayas' crack distribution and is

properly held accountable for it as an aider and abettor, it is the Cocaine base that is driving the advisory guideline range and ten-year mandatory minimum.

**(2) <u>History and Characteristics of Eddie Matos</u>**

Eddie Matos is a 27-year old native to Springfield, Massachusetts and is the third of four boys. According to the presentence report, the defendant's father usually worked as a janitor, but was apparently a heroin addict. Perhaps as a result of Mr. Matos' father's heroin use, Mr. Matos left the home when the defendant was 12 years old. For all practical purposes, the father has not been much of a presence in the family's life and the defendant reports that his mother was his primary care-giver. While Matos' two older brothers shared a close relationship and work together in the same bakery shop, the defendant was closest to his mother and younger brother, Rafael.

When Eddie Matos was just seventeen years old, he met his common-law wife, Lesley Mendez. Ms. Mendez was a single parent with a one year old son, Manuel Garcia. Young Manuel has had no contact with his biological father and the defendant is the only father he has ever known. Before his eighteenth birthday, Matos and Ms. Mendez had their own child, Eddie Matos, Jr. Another son, Davien Matos, was born in 2002. But in 2003, the couple split and the defendant entered into a short-lived relationship and marriage that did not produce any children. After one year, the defendant resumed his long-term relationship with Ms. Mendez; in 2005, the couple's twins were born, Xavier and Amaya.

Together, Eddie and Lesley work at supporting their five children, financially, mentally, and emotionally. While there may seem to be nothing unusual about the circumstances of this family, the patience, effort and care with which this very young

couple have taken to ensure the health and happiness of their five children is truly remarkable and commendable.

Eddie Matos, Lesley Mendez, and Eddie's mother all work for Stavros, an organization in Springfield that provides home care for the sick and the elderly. The defendant has been with Stavros intermittently since November 2002. Presently, he and Lesley work as personal care assistants for Rosaura Vazquez. They have staggered their hours working for her to ensure that the children will not be left alone. Ms. Vazquez advises in a letter,

> Eddie is my PCA [Personal Care Attendant] worker. He's been working for me for about 2-3 years. He's a great worker/person. He's very hard working, also he's kind sweet honest. He also has a great family, beautiful children."

Exhibit A. She reported to the Probation Officer that the defendant is "never late, a great person, always happy and willing to help others." He cooks, cleans, helps her pay bills, goes shopping for her and helps her with her medication. None of this is out of character for the defendant.

In attachments to this memorandum, the defendant and Ms. Mendez have provided a photo-biography of their children. Exhibit B. The family story relates a bit about each child. Five months after the defendant was arrested their twins, Xavier and Amaya were born. Amaya, the only girl in the family, is almost three years old. Born with a hole in her heart, Amaya underwent surgery at Children's Hospital in Boston and is presently doing well. Xavier, her twin brother, had an emergency surgery when his

appendix ruptured in 2006. He underwent surgery at Bay State Medical Center and is presently doing well.

Davien is presently 5 ½ years old. Extremely sensitive by nature, Davien is the most affected by the possibility of his father's incarceration. Every time the defendant leaves home, Davien suffers an anxiety attack for fear his father is not coming back. Davien's teacher reports that "Davien is doing just fine in school…He still has his shy moments, but we haven't had any problems in the morning for a while. Davien's dad has been picking him up….He's a great boy." Exhibit C.

Eddie Matos, Jr. is 9 years old and in the third grade. He suffers from asthma and allergies and is treated for these issues. His teacher, Mrs. Keyes, wrote to Ms. Mendez, stating:

> "I'm sorry I have not had you in for a conference. There was no need except to tell you what a wonderful boy Eddie is. He is a joy to have in my classroom. He does whatever is asked of him. He is doing very well this year. He is a little rusty with his multiplication and division facts. A set of flash cards would benefit him to practice on. He was absent quite a bit when the facts were introduced…"

Exhibit D. Ms. Mendez reports that Eddie Jr. has shown some stress at school which she believes is due to his father's uncertain situation.

The oldest child, Manuel Garcia, is 12 years old and finishing up the sixth grade. Manuel is cared for by the defendant with the same loving hand he provides to his biological children. Manuel's good mental health is demonstrated by his comportment at school. His teacher, Ms. Cote wrote that, "Manuel is behaving and focusing on his

academics. He does need to make up some work to improve his grade." His science teacher reports that Manuel has a "B" in science. Exhibit E.

Further examination of the Presentence Report provides insight into the life of this 27 year old defendant. Eddie Matos acquired a strong sense of responsibility from a very early age. He reports that he began operating a concession stand at the Springfield Civic Center when he was 14 years old and did this for four years until his girlfriend became pregnant and he needed to make more money. *PSR ¶80.* Although Matos has always worked, a lack of special skills and education has hindered his ability to earn an adequate income to support a family of seven. Even though making money through legitimate means has been difficult for Mr. Matos, he has maintained regular employment.

Nonetheless, the children are well cared for due to the judicious use of a combination of resources: his common-law wife, Ms. Mendez also works and it appears that Matos' mother and brother contribute financially in other ways; food stamps and section eight housing allowance also contribute in a meaningful way. *PSR ¶86-89.* All of these resources provide legal means to maintain the family. And as already recounted, the defendant's sense of obligation and generosity has even extended to his co-defendant Zayas' family. It appears that Matos has provided financial assistance to Zayas' children in 2003. *PSR ¶93.* Also Noteworthy is that even in Matos' poor financial state, he has managed to file and pay taxes on a regular basis. *PSR* ¶ 91.

There are a number of people who submitted letters on Mr. Matos' behalf which give insight into his circumstances and character. His mother talks about Mr. Matos' severe depression as a child resulting from his father's abandonment of the family and how he was manipulated by Zayas and others whom Mr. Matos no doubt looked up to as

father figures. Exhibit F. Ms. Mendez's letter clearly illuminates Mr. Matos' good character and status as the foundation of their family. Exhibit G. Further, Ms. Mendez also reports that Mr. Matos is extremely active and present in all aspects of the lives of his children, from picking them up at school to going to their doctor's appointments. Exhibit H. In fact, there are many people willing to step up and vouch for Mr. Matos: his former boss from Bradley Airport, Ryan Mascara, Exhibit I; His sister in-law, Melody Mendez, Exhibit J; Lilliam Rodriguez, Exhibit K; Rosaura Vazquez, Exhibit A.

Mr. Matos also has an employment history that demonstrates he is a responsible and productive member of society. Presentence Report, ¶ 74-82 He worked for STRAVOS, from 2004-2005, Exhibit L, and can show pay stubs from 2008, Exhibit M, indicating that he has consistently maintained employment. Mr. Matos is not a depraved drug dealer. He has a family who loves him and a steady employment record. He has gas bills, Exhibit N, electricity bills, Exhibit O, to pay just like all of us.

While Eddie Matos appears to be mentally well-adjusted, he has admitted to an affliction of habitual marijuana use from the age of fourteen. To his credit, he has not used marijuana for the past three years and two months since his arrest. He reports that since he was first arrested and spent one month in the Hampden County House of Correction, he has been drug free. *PSR* ¶ 71. Since his release from custody to electronic monitoring, he has submitted to urine tests at pre-trial services in Springfield. He has not tested positive while on pre-trial release. Perhaps Matos' drug use issues have been overcome, but such long term use of marijuana indicates a dependence that could re-appear at a future date. Since the pre-sentence interview when Matos advised Probation that he is not in need of treatment, he has agreed that treatment would be beneficial and

he is therefore willing to participate in treatment. The Court should also take note that Mr. Matos has strictly complied with his conditions of release which are evident by Mr. Matos obtaining permission from the Court to travel to a graduation event in Middlebury, Connecticut. Exhibit P.

**(3) Consideration of the Factors Set Forth in 3553(a) and Policy Considerations Support a Sentence Reduction**

Congress delineated the goals of sentencing in 18 U.S.C. § 3553(a), and required courts to craft a criminal defendant's sentence in light of these policy directives. The over-arching directive is the need to impose a sentence that is "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. 18 U.S.C. § 3553(a). These purposes include the need to reflect the seriousness of the offense, promote respect for the law, provide just punishment, create adequate deterrence, protect the public from future crimes of the defendant, and provide the defendant with necessary treatment and training. 18 U.S.C. § 3553(a).

Mr. Matos' guideline range is increased substantially because the cocaine he aided and abetted had been cooked into cocaine base. Thus, if the guidelines are construed using a formula of powder cocaine instead of cocaine base, and assuming arguendo that the defendant is only eligible for the adjustment for acceptance of responsibility the offense level would be:

Base Offense Level: 18

Calculated as follows: 110.9 grams of cocaine @ 1 gram = 200 grams marijuana equals a total accountability of 22,180 grams of marijuana.

804.9 grams of marijuana +22,180 grams of marijuana = 22,984.9 grams = 22.984 kg. of marijuana.

| | |
|---|---|
| Offense Level | 18 |
| Acceptance of Responsibility | -3 |
| Total Offense Level | 15 |

At offense level 15 with a criminal history category of one, the guideline range is 18- 24 months. Whereas currently the Guideline range under which the government argues Mr. Matos should be sentenced is 29, when adjusted for acceptance of responsibility. This guideline range is 87-108 months. The disparity between the two sentences is approximately 450%. If this Court fails to recognize the unjust disparity between cocaine base and cocaine powder, the result will undermine the public policy goals of the guidelines because "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 128 S. Ct. 586, 599 (2007).

Further Mr. Matos' sentence should take into account the seriousness of the offense. It is now well established that the two forms of the drug have the same physiological and psychotropic effects. *United States v. Kimbrough*, 128 S. Ct. at 566. The harm done by distributing cocaine base is not discernibly worse than the harm done by distributing powder cocaine, although both are harmful. The Supreme Court recognized this problem and held "[I]t would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity

yields a sentence 'greater than necessary' to achieve §3553(a)'s purposes, even in a mine-run case." *Kimbrough* 128 S. Ct. at 575. Thus, it would not be an abuse of this Court's discretion to impose a sentence that treated cocaine base and cocaine powder the same.

In light of *Kimbrough* and the Sentencing Commission's own jaded view of the crack/cocaine penalties and disparity, failure to take such disparity fully into account would detract from the goal of promoting respect for the law. For Courts to continue to impose disparate sentences after such respected authorities as the Supreme Court and the Sentencing Commission have denounced this treatment would be to invite widespread disdain and disrespect of the law and our legal system.

There are other factors in the specific case of Eddie Matos that mitigate in favor of a non-incarceration sentence. Incarcerating Mr. Matos is not needed to deter Matos from further crime. The defendant has already been deterred by his conviction; he has demonstrated his commitment not to distribute or use marijuana by consistently maintaining adherence to the pretrial release conditions for more than three years. Matos undoubtedly fell into distributing marijuana as a convenient and economic source for his own marijuana use. Although he has not used marijuana since his arrest, the appropriate drug treatment and probation supervision would ensure that Matos would remain drug free.

As for general deterrence, experts are beginning to realize that there may be an inverse effect of incarcerating "large numbers of young men of a certain age…[T]here is growing evidence that the coerced removal of residents from poor and disadvantaged neighborhoods –even of those thought to be involved in criminal activity—may, in some cases undermine a community's ability to self-regulate and exercise informal social

control over crime by further disrupting the creation of social and familial bonds." See *U.S. v Myles Haynes* Crim. No. 06-10328-NG (June 3, 2008), Sentencing Memorandum, pg13-14.

In the case of Eddie Matos, were he to be incarcerated, his common-law wife and five young children would be left to fend for themselves in a neighborhood fraught with drugs and violence. Matos has four young sons and a daughter who would be exposed to the drug infested neighborhood, but without their father's guidance and supervision. Matos himself was devoid of a father during the crucial years of his adolescence growing up in the same neighborhood. The pattern continued; his father was a heroin addict, the defendant began to develop a dependence on marijuana. Eddie Matos has an opportunity to break this pattern and to show his children how hard work, education and loving parents can lead them away from the culture of the poor neighborhood into a better life.

There is also need for the sentence to avoid any unwarranted disparity. Such disparity would be evident were Matos to receive the same or similar sentence as his co-defendant, Zayas. In correlating culpability with punishment, it is necessary to compare the actions and roles of each co-defendant. In the case of Zayas, he ran an organization that distributed drugs throughout several large cities. It is unknown how much money Zayas earned from his distribution, but it is known that Zayas had no legitimate employment since he lost his job at AMPAD. It is also known that Matos was lawfully employment, paid taxes, and even provided some financial assistance to Zayas' children. Matos allowed his home to be used as a "safe house" for Zayas. Matos received no money for his trouble, although he may have received a discount on marijuana from

Zayas. Matos did distribute marijuana, but his accountability for distributing cocaine base is due to aiding and abetting and not to directly distributing cocaine base.

Finally, *Gall* has properly recognized that Probation is punishment. This is not a new concept as the First Circuit also recognized such in remanding a case for resentencing where the defendant had already served the probation sentence imposed by the District Court judge. *United States v Dan Martin*, slip op03-1068 (1st cir March 30, 2004) ("Having determined that Martin must receive credit for time served on probation against any sentence of imprisonment imposed after this appeal, we must next consider the calculation of this credit.") pg 22. The defendant had also served time under home detention and the appellate court acknowledged that it is more onerous to serve home detention than straight probation and instructed the district court to take that fact into account: however, the district court was not permitted to credit probation day for day in imposing a jail sentence. *Id.* pg24-25.

The point here is not to say that probation equals jail. But the fact that Eddie Matos has already spent three years on home detention as a condition of release should be factored into the other issues this court considers in fashioning an appropriate sentence. The defendant wishes to point out that although the three years on home detention has been punishment, it has also allowed him to demonstrate his ability to comply with restrictions and to free himself of his marijuana use. He has made substantial progress during this period. There is very little likelihood that Matos will recidivate.

## IV. Summary

The sentence recommended by the defendant of time served and supervised release, with community and home confinement, coupled with drug treatment is

"sufficient, but not greater than necessary," to accomplish the goals of sentencing. 18 U.S.C. § 3553(a). Mr. Matos was not involved with distributing cocaine base-he only allowed his co-defendant to store drugs at his home. Mr. Matos did not possess weapons in connection with the offense, evident by the lack of Mr. Matos' fingerprints on any of the weapons (Zayas' fingerprints were found). If this court finds that the defendant is eligible for a "safety valve" reduction and reduction for his role as a minor participant, pursuant to 3B1.2(5) and, if the court refuses to apply the gross disparity between cocaine base and cocaine powder (which it may do under the precedent set forth in *Kimbrough* 128 S. Ct. at 575) rather applying the guideline range as it is factored for cocaine powder, the defendants offense level will be 11. This would yield a sentence for Mr. Matos of 8-14 months. Coupled with consideration for time served and the fact that Mr. Matos' has been on supervised release since 2006, a sentence comparable to that requested by the defendant would satisfy the policy goals of sentencing and be consistent with this guideline range.

Furthermore, Mr. Matos has a family to whom he is a positive role model. He has always played as active a role in the lives of his children as our society would want of any father. He is loved by his family and gives love in return. To sentence Mr. Matos to a lengthy prison term would deprive those children of the most important male role model they have: their father. There is no telling which roads Mr. Matos' children will take if he is incarcerated for ten years. Almost certainly incarceration of Mr. Matos will be to the detriment of those children, and thus society. Such damage will not be able to be undone in ten years when Mr. Matos will be released: Amaya and Xavier will be

almost thirteen, Devien will be fifteen and a half, Eddie Jr. will be 19, and Manuel will be 22.

Furthermore, Mr. Matos has ceased using all illegal drugs and has abided by the terms of his release. He has demonstrated his capacity for rehabilitation and desire to pursue further drug treatment. He is not a danger to anyone. Society has nothing further to gain from his incarceration.

The defendant wishes the court to provide him with the opportunity to continue rearing his children together with their mother, Lesley Mendez, in a safe and constructive manner. Whichever decision the court comes to, the defendant stands ready to serve the sentence imposed.

## V. Conclusion

For the above-mentioned reasons the defendant requests that the court adopt the defendant's recommendation for sentencing.

EDDIE MATOS
By his attorney,

/S/ Perman Glenn, III
Perman Glenn, III
Law Offices of Perman Glenn, III
1163 Main Street
Springfield, MA 01103
Tel. No. (413) 734-9955
Fax No. (413) 734-1255

**NOTE**

To this Honorable Court:

The exhibits referenced in the above memo have been mailed as hard copies on July 2, 2008 at 10:30 a.m. These were sent separately because it was impractical to scan the numerous documents into the computer to be filed electronically. Further, we felt that it would be imperative to submit the original color photographs. The photos would have been converted to black and white if the photos were scanned. A table of contents of those exhibits can be found on the following page.

Sincerely,

/S/ Perman Glenn, III

Perman Glenn, III
Law Offices of Perman Glenn, III
1163 Main Street
Springfield, MA 01103
Tel. No. (413) 734-9955
Fax No. (413) 734-1255

Exhibit Table of Contents

| | |
|---|---|
| Exhibit A | Letter from Rosaura Vazquez |
| Exhibit B | Photo Biography of Eddie Matos's Children |
| Exhibit C | Letter from Davien Matos's Teacher |
| Exhibit D | Letter from Eddie Matos Jeri's Teacher |
| Exhibit E | Letter from Manuel Garcia's Teacher |
| Exhibit F | Letter from Matos's Mother |
| Exhibit G | Letter #1 from Ms. Mendez |
| Exhibit H | Letter # 2 from Mr. Mendez |
| Exhibit I | Letter from former Boss from Bradley Airport, Ryan Mascara |
| Exhibit J | Letter from Sister In-Law Melody Mendez |
| Exhibit K | Letterer from Lilliam Rodriquez |
| Exhibit L | Letter from Leonides P. Ramos |
| Exhibit M | Pay Stubs from 2008 |
| Exhibit N | Gas Bill |
| Exhibit O | Electricity Bill |
| Exhibit P | Motion to Modify Conditions of Release, June 16, 2006 |